**TU'ULIMA TALILI and TALILI FAMILY, Plaintiffs**

**v.**

**FAGA WILLIAMS and SATELE UOKA MOMOSEA, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 6-89

February 4, 1991

Before REES, Associate Justice, VAIVAO, Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiffs, Charles V. Ala'ilima
For Defendants, Afoafouvale L. Su'esu'e Lutu

23

This case amounts to a relitigation of *Talili v. Satele*, 4 A.S.R.2d 23 (1987), involving substantially the same land, the same parties, and the same issues.

In *Talili v. Satele* (hereinafter referred to as "the 1987 case") we held that certain land within a larger tract called Tomea, belonging to the Satele family, had long been assigned to the descendants of a Satele family member called Talili. Satele Uoka Momosea, a defendant in the 1987 case as in this one and then, as now, the sa'o of the Satele family, proposed to build a house for his sister on land that had previously been occupied by the Talilis. We held that the sa'o of a family does have a right, in some circumstances, to take land previously assigned to one family member when the land is needed for important family purposes, but that this right is circumscribed by legal and traditional prerequisites of consultation and compensation which had not been observed in the case at hand. 4 A.S.R.2d at 27-28.

Both Satele and the Talilis subsequently notified the Court through counsel that they had settled their remaining differences in accordance with the Court's decision. The Talili people had agreed to withdraw their objection to the construction of a house for Satele's sister, thereby giving up any traditional and legal rights they may have had to the land on which this house was being built. In return, Satele had designated the boundaries of an area of Tomea which all parties agreed would thereafter constitute the area assigned to the Talilis.

The present case arose less than two years later when defendant Faga Williams, a Satele family member who is closely related to defendant Satele Momosea but not to the Talilis, was assigned by defendant Satele to live and work on part of the land then occupied by Talili plantations.

The plaintiff Talilis urge that the assignment to Faga contravenes the Court's 1987 order and the settlement entered into pursuant to that order. Defendants Satele and Faga deny that the land assigned to Faga in 1989 is within the boundaries of the land assigned to the Talilis. Defendants also contend that even if the land is within the 1987 Talili boundaries, Satele retains the power as sa'o of the family to reassign family land as and when he pleases. They maintain that as the population of the island of Tutuila increases, it follows naturally that some family members will have to give up some of their assigned land to other family members, and that the courts should not interfere with decisions by a sa'o about which family members should be required to make such

sacrifices.

It is clear that the land assigned to Faga is within the area long occupied by the Talilis. Defendants maintain, however, that the 1987 settlement excluded from the Talili-assigned area some Talili-occupied land *in addition to* the area that was taken for Satele's sister's house. Plaintiffs vigorously deny this, saying that they agreed to give up some of their previously assigned land only in exchange for a solemn commitment that there would be no further encroachments.

All parties agree about the northern, southern, and western boundaries of the area designated for the Talilis in 1987. These are, respectively, the main road, a gully, and a line extending at a right angle from the road at a point just to the east of Satele's sister's new house. The disagreement is about the eastern boundary. The Talili witnesses, including their counsel who was present when the boundaries were pointed out, testified that Satele specifically designated the well-settled boundary with the village of Futiga as the eastern boundary of the Talili assigned area. The Satele witnesses, including their then-counsel who was also present, testified that Satele never walked over to the eastern side of the land occupied by the Talilis, apparently because the dispute in question was about the western part of the Talili area and not the eastern part. One of defendants' witnesses, however, testified that Satele did point toward the easternmost Talili house, thus designating all the land east of that house as outside the Talili area. (The present dispute concerns land between this easternmost house and the Futiga border.)

Whether or not Satele actually walked over to the eastern part of the Talili holdings to point out a boundary, we find for plaintiffs on this issue. If the parties felt no need to designate an eastern boundary, it was precisely because there was no dispute about what this boundary should be. The long-standing eastern boundary of the Talili portion of Tomea was the Futiga line. If the parties to the 1987 case had meant to change this boundary --- and thereby to cancel a long-standing traditional assignment of land to family members whose crops even then were growing on the land --- they would have done so by clearly identifying a boundary, as they did in the west.

We note, moreover, that even the Talilis' version of the 1987 settlement was somewhat more favorable to Satele and his immediate relatives than was required or suggested by the Court's opinion. *See Talili v. Satele, supra*, 4 A.S.R.2d at 28 ("At the conclusion of such negotiations, the plaintiffs should have the right to cultivate

25

approximately the same amount of land as they were cultivating immediately prior to the bulldozing."). The defendants' version of the settlement --- that plaintiffs not only gave up the part of their assigned land which had been the subject of the 1987 case, without insisting on the customary compensation for which they had just fought and won in court, but also gave up an altogether separate portion of their assigned land which had not theretofore been in dispute --- is inconsistent with everything else the litigants have said and done during the course of the two recent lawsuits.

Defendants are also wrong about the law and custom with respect to assigned land, for reasons we have stated at length in our 1987 decision and in our opinion granting a preliminary injunction in the present case. While it was undoubtedly true before the coming of the present government that some matais, on some occasions, wielded the *power* to dispossess family members at will of lands they had long occupied and cultivated, their *authority* to do so was strictly limited by customary law. The High Court's decisions over the last ninety years or so have attempted to restate and reinforce those customary rules. *See, e.g., Mailo v. Fanene*, 1 A.S.R. 191 (1907); *American Samoa v. Iose*, 2 A.S.R. 638, 640 (1939) ("[U]nder the Samoan custom . . . . the plantation and the fruits thereof are the property of the man putting in the plantation subject to the duty of service to the matai."); *Malaea v. Fiapapalagi*, 2 A.S.R. 651 (1951); *Vaotuua Family v. Puletele*, 3 A.S.R. 145 (1955); *Tago v. Faleulu*, 3 A.S.R. 370 (1958); *Tali v. Tupeona*, 4 A.S.R. 199 (1961); *Leapaga v. Masalosalo*, 4 A.S.R. 868 (1962); *Ifopo v. Vaiao*, 2 A.S.R. 472 (1949); *Tiumalu v. Lio*, 3 A.S.R. 176 (1955).

The tradition that certain lands are reserved for the use of certain family members is at its strongest where the family is a large and prestigious one containing clearly identifiable sub-groups. In smaller families the sa'o stands in relation to members of the family as a father to his children; the handful of large families headed by "paramount chiefs" are more like European principalities in which the relation of the prince to his subjects was an essentially political one, carried on through various mediating layers of well-defined rights and obligations. Satele is an outstanding example of such a family. The Satele family consists of several large clans, each of which has various sub-groups and could just as easily be regarded as a family unto itself, and Satele lands tend to be clearly identified with one or another of these clans or sub-groups.

Tomea has long been held to be reserved for the exclusive use of "those members of the Satele family who are the descendants of Satele

Pili *and* the members of the Satele family who were under the mataiship of Satele Pili, and their descendants." *Satele v. Faga*, 2 A.S.R. 26, 28 (1938) (emphasis added). Defendant Satele Momosea Uoka and his immediate relatives, including defendant Faga Williams, are direct descendants of Satele Pili. As such they belong to one of the two groups who hold a beneficial interest in Tomea. The Talili plaintiffs belong to the other group: Satele family members who were "under the mataiship of Satele Pili" --- that is, who supported Pili against his rival Satele Uga during a time when there was a split in the family.

What is really going on in this case has little or nothing to do with theories about the absolute versus limited power of the sa'o; indeed, Momosea himself once successfully argued in Court (prior to becoming the Satele) that the Satele titleholder does not have the authority he now asserts to assign land within Tomea to any family member he pleases. *Satele v. Naea, Momosea & Sisters*, LT No. 1544-75 (Decision issued November 26, 1976). Nor is this case really about the diminishing amount of land per person in Tutuila; the Satele family has many lands, and the record affirmatively discloses that there is a large vacant area immediately behind the new house of Satele's sister, formerly occupied by Talili crops but already given up by the Talilis as part of the 1987 settlement. What is going on here, as in five of the other six lawsuits concerning Tomea during the last twenty years,[1] is that some of the immediate relatives of the present Satele have read the 1938 *Satele v. Faga* case as reserving Tomea for the exclusive use *only* of descendants of Pili, and therefore believe they have a right to expel those long-time occupants of Tomea who were "under the mataiship" of Pili, although

---

[1] *See Momosea v. Talili*, LT No. 29-77 (dismissed without prejudice June 15, 1977); *Talili v. Foma'i*, LT No. 72-79 (dismissed without prejudice June 17, 1980); *Lavata'i v. Foma'i*, LT No. 96-79 (dismissed without prejudice June 17, 1980); *Momosea v. Talili*, LT 19-84 (Order issued July, 8, 1985); *Talili v. Satele*, 4 A.S.R.2d 23 (1987). All of these cases involved Momosea (now Satele Momosea) or members of his immediate family on one side, and Talilis on the other. The only case in which Momosea squarely prevailed was not against the Talilis but against an attempt by the then-Satele to assign land in Tomea to a member of the Uga side of the family. This case concerned land outside of the part of Tomea occupied by the Talilis, apparently in an area traditionally reserved for descendants of Pili. *See Satele v. Naea, Momosea & Sisters*, LT No. 1544-75 (Decision issued November 26, 1976).

27

not descended from him. This contention is flatly inconsistent with the language of the 1938 opinion and has been rejected by the Court on at least two occasions before now. *See Momosea v. Talili*, LT No. 19-84 (Opinion and Order issued July 8, 1985); *Satele v. Talili*, *supra*, 4 A.S.R.2d at 27.

Tomea in its entirety, as depicted in a 1930 survey map by defendants' ancestor Faga, appears to consist of about ten acres. *See* Defendant's Exhibit 2. Interestingly, this 1930 map was a retrace of a 1907 survey which had designated all Tomea as the property of "Satele and Talili." *See Satele v. Afoa*, LT No. 19-1930 (1907 survey map by J.W. Jewett). *See also id.* (testimony of Satele Moso'oi, March 4, 1932): "In 1907 . . . Satele then make his appointment and told . . . . Talili I designate the land Tomea for you to use."). The Talilis now occupy only a fraction of this land. They have been occupying it, along with the portion recently given up for the house of Satele's sister, for many years. The 1987 settlement reaffirmed their traditional right to occupy this part of Tomea and should have put an end to further contention.

We hold that the eastern portion of Tomea, from the Futiga boundary to the line drawn by the parties in 1987 near the house of Satele's sister, is Satele communal land reserved for the exclusive use of descendants of Talili. Although they must continue to render tautua to Satele (as they have been doing through their branch of the family in Vailoa) and may not build structures requiring building permits or separation agreements without permission of Satele, the descendants of Talili may not be disturbed in their exclusive possession of this land.

The preliminary injunction issued on April 19, 1990, will be made permanent, and defendant Faga Williams will be further directed to remove his crops and structures from the land within sixty days. Any crops or structures remaining on the land after that time will be deemed to have been surrendered to the plaintiffs.

It is so ordered.